IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 08-0730 WHA |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT FLORES' MOTION TO SUPPRESS RE 890 GOETTINGEN SEARCH** |
| MORIS FLORES, *et al*. | |
| Defendants. | |

**INTRODUCTION**

Defendant Moris Flores moves to suppress all evidence seized from a search of 890 Goettingen Street in San Francisco ("890 Goettingen") (Dkt. No. 1994). After reviewing the parties' submissions, oral argument, and presentations at the evidentiary hearing, this order finds *Franks* suppression is not warranted.[1] Accordingly, the motion is **DENIED**.

**STATEMENT**

On the morning of April 21, 2008, a search warrant was issued by San Francisco Superior Court Judge John Stewart for the search of 890 Goettingen Street in San Francisco — the residence of defendant Moris Flores (Gov't Exh. 1; Tr. 21). To obtain the search warrant, SFPD Inspector Michael Johnson submitted an affidavit stating that there was probable cause to believe evidence of the double shooting homicide of Ernad Joldic and Philip Ng would be found at 890

---

[1] The initial motion relied solely on police records and a declaration from defense counsel. Regardless of the government's objection to the lack of sworn declaration from defendant Flores, the police reports constituted an adequate proffer warranting an evidentiary hearing (Dkt. No. 2300 at 15). Simply because a defendant makes an adequate proffer warranting an evidentiary hearing, however, does not guarantee that the defendant will prevail at the hearing.

Goettingen (Tr. 8–9). The Johnson affidavit explained that SFPD Sergeant Mario Molina — a member of the SFPD Gang Task Force — told him that on March 29, 2008, the morning after the Ng/Joldic shootings, defendant Flores made statements to a confidential reliable informant indicating he had knowledge of or was otherwise involved in a series of shootings that occurred the previous night/early morning (Gov't Exh. 1 at SW006562–63; Tr. 11–16, 23–24).[2] During the conversation, defendant Flores allegedly stated that MS-13 had "done some work last night" — which was gang slang for shooting or assaulting rival gang members. He also purportedly stated there was "payback" at "26th and Folsom" and at "Geneva" — including three "hits" (three homicides). The affidavit explained that Sergeant Molina confirmed that there were gang-related shootings near these locations the previous night/early morning and Sergeant Molina believed the "three hits" referred to the Ng/Joldic homicides. The affidavit also stated that the informant identified "Lobo" (Carlos Flores), "Dreamer" (defendant Franco Hernandez a/k/a Manuel Franco), and "Spooky" (defendant Erick Lopez) as having involvement in the shootings.[3] The affidavit asserted that the informant was wearing a body wire and recorded the conversation with defendant Flores.

The day after defendant Flores allegedly made the aforementioned statements to the informant, defendant Lopez was arrested with a firearm that was identified by the SFPD as the weapon used in the Joldic/Ng homicides. The affidavit recounted that two days after the arrest, the informant again met with defendant Flores while wearing a body wire. Defendant Flores purportedly stated "Spooky (defendant Lopez) was arrested the night before last . . . with the gun . . . they took him with blood on his shoes." The informant also reported defendant Flores possessed a 9mm firearm. The affidavit linked this information to statements by Officer Molina that a 9mm was used in a number of assaults and at least one murder in the Mission District in the preceding three years.

---

[2] Sergeant Molina was promoted to the rank of sergeant after the incident. At the time of the incident, he had the rank of police officer.

[3] Sergeant Molina testified that "Franco Hernandez" is an alias for defendant Manuel Franco because "Franco Hernandez" are his two last names (Tr. 98).

2

At the evidentiary hearing, Inspector Johnson explained that although he authored and submitted the affidavit, the "facts" included therein were provided by Sergeant Molina over the course of four to twelve telephone conversations (Tr. 16, 19, 30–31, 64–65). Inspector Johnson did not speak directly with the informant or review the recordings himself before preparing the affidavit (Tr. 16). Inspector Johnson made it clear to Sergeant Molina that the information would be incorporated into a search warrant affidavit (Tr. 24). It has been shown, however, that portions of Officer Johnson's affidavit were untrue. Specifically, the government has admitted that although the Johnson affidavit stated that defendant Flores' statements were recorded on March 29, no such recording was made (Opp. at 13, 17). Nonetheless, Officer Johnson testified that although he could not recall whether Officer Molina specifically told him the conversation took was recorded, he prepared the affidavit pursuant to what he believed at the time that Sergeant Molina had told him and that he did not intentionally incorporate any false information into the affidavit (Tr. 17–18, 30–31, 67). His declaration explained that despite his effort to submit an accurate search warrant affidavit, he could not eliminate the possibility that he misunderstood or misheard Sergeant Molina (Johnson Decl. ¶ 6). Regardless, he has declared that he was and is certain that the informant reported that defendant Flores made statements indicating MS-13 was involved in acts of violence in retaliation for the shooting of defendant Velasquez.

Sergeant Molina confirmed that he provided Inspector Johnson with information he received from the informant (Tr. 73–74). He testified that the substantive statements attributed to the informant in the affidavit were correct but specifically disavowed telling Inspector Johnson that the informant wore a body wire and recorded a conversation with defendant Flores on March 29 (Tr. 82, 89–92, 94). Instead, he only recalled stating that the informant would wear body wires generally because ICE was conducting an investigation into MS-13 (Tr. 81, 91). He also had advised Inspector Johnson that the ICE informant had been used numerous times in the past and had provided reliable information that resulted in successful weapons confiscation (Tr. 79–80). He did not recall ever stating that the informant had made particular recordings regarding particular individuals (Tr. 82). He could not recollect whether or not he reviewed the informant's body wire transmissions (Tr. 81).

3

The warrant was executed on April 23, 2008, and resulted in the seizure of: mail addressed to defendant Flores; items with alleged gang markings; a laptop; photograph negatives; and clothing.

**ANALYSIS**

To be entitled to suppression, defendant Flores must show that a "false statement knowingly and intentionally, or with reckless disregard for the truth, was included in by the affiant in the warrant affidavit, and the allegedly false statement was necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155–156 (1978). Defendant Flores has failed to meet his burden to make this showing. *United States v. Craighead*, 539 F.3d 1073, 1080 (9th Cir. 2008).

    **1.**    **INTENTIONAL FALSE STATEMENT OR RECKLESSNESS**

At issue in the instant motion is the Johnson affidavit's recounting of information received from an informant via Sergeant Molina. For *Franks* suppression to be warranted, either Sergeant Molina or Inspector Johnson must have known the statements incorporated into the affidavit were untrue, or must have included the statements with reckless disregard for the truth.[4] *Franks*, 438 U.S. at 171–72. This has not been shown. Both Sergeant Molina and Inspector Johnson have testified that they truly believed the informant had the alleged conversations with defendant Flores (Tr. 17–18, 67, 82, 89–92, 94). The officers' testimony was sufficiently credible on this point. There is no indication in the record that the officers should have doubted the informant's statements or suspected the reliability of the informant (Tr. 79–80). And, although Inspector Johnson erred in swearing that the informant's conversations with defendant Flores were recorded and made on March 29 — these errors were not made in reckless disregard for the truth. At most, the errors were negligent failures to re-verify Sergeant Molina's statements. The record is clear that Sergeant Molina told Inspector Johnson that the informant recorded some conversations with

---

[4] A deliberate or reckless false statement or material omission by a government official may support *Franks* suppression even if the government official in question did not author the search warrant affidavit containing the false statement or material omission. *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir. 1992). Accordingly, although Sergeant Molina did not author the Johnson affidavit, if he deliberately or recklessly caused a false statement or material omission to be included in the affidavit, *Franks* suppression would be warranted. It has not been shown that this was the case.

4

MS-13 members (Tr. 30, 81–82, 91). At most, Inspector Johnson misinterpreted this general statement to apply to the specific March 29 conversation. While additional verification by Inspector Johnson may have been preferable, *Franks* suppression is not warranted for what at most was neglect.

Additionally, it is immaterial that Inspector Johnson's chronology identified different suspects than those identified in the search warrant affidavit. Defendant Flores was identified as having some involvement in the shootings in both the chronology and the search warrant affidavit (Tr. 50, 53; Gov't Exh. 1 at SW006564; Flores Exh. C at V003575; Dkt. No. 2540 at 11). Accordingly, even if the suspects changed over time, the critical piece remained the same — that defendant Flores was a suspect in the Ng/Joldic homicides. Regardless, it was not shown that the discrepancy was intentional or reckless. The officers adequately explained that the first list of suspects was Sergeant Molina's best guess, and that the second list was after Sergeant Molina was given the benefit of the informant's input (Tr. 58–61).

### 2. MATERIALITY TO PROBABLE CAUSE FINDING

More importantly, the untrue statements at issue were not material to the finding of probable cause. Where a *Franks* error is immaterial to the magistrate judge's finding of probable cause, suppression is not warranted. *Franks*, 438 U.S. at 171–72. Although the original motion suggested that the conversations between defendant Flores and the informant regarding the shootings may have never taken place, the allegation was not borne out in the subsequent proceedings. Defendant Flores only demonstrated that (1) no *recording* was made of him on March 29; and (2) the dates of the conversations *may* have been different than those dates stated in the Johnson affidavit. These untrue statements are significantly more limited than those alleged in the original moving papers. Had it been demonstrated that the conversations with the informant never took place, then it may have been that the untrue statements were material to the probable cause finding. This, however, was not demonstrated to be the case.[5]

---

[5] The government also submitted investigation reports from ICE that indicated the informant was debriefed by ICE on April 2, 2008, and April 14, 2008, wherein the informant reported that defendant Flores made such statements (Dkt. Nos. 2136-2, 2136-3). Although the debriefings were not considered by Judge Stewart and do not prove that defendant Flores indeed made the alleged statements, they corroborate the fact

5

Although the untrue statements regarding the March 29 recording bolstered the probable cause finding, they were not essential to the finding. The informant's retelling of defendant Flores' alleged statements — even without the assertion that the conversations were *recorded* on a particular date — established a fair probability that evidence of the Ng/Joldic homicides would be found at his residence at 890 Goettingen. *See United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007). Even if defendant Flores was correct that the evidentiary hearing only established that the informant stated that unidentified MS-13 members — not defendant Flores specifically — discussed the shootings, the affidavit still established probable cause to search 890 Goettingen (Dkt. No. 2593 at 5–6). As defendant Flores' supplemental reply brief points out (Br. 5–6), the evidentiary hearing established that even if defendant Flores did not make the alleged inculpatory statements, the informant specifically identified defendant Flores as being involved in the shootings. This information — combined with the affidavit's description of the informant's reliability — established probable cause to search 890 Goettingen. Accordingly, even had the untrue statements regarding the recording not been presented to Judge Stewart, the search warrant affidavit would have established probable cause sufficient for the warrant to issue.

## CONCLUSION

For the reasons stated herein, defendant Flores' motion to suppress evidence seized from 890 Goettingen is **DENIED**.

**IT IS SO ORDERED.**

Dated: January 6, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

that the *informant* was reporting that defendant Flores made the statements — supporting the conclusion that Sergeant Molina and Inspector Johnson did not fabricate the statements.

6