MARK ROSENBUSH
Attorney at Law (CSB 72436)
214 Duboce Ave.
San Francisco, CA 94103
Tel: (415) 861-3555
Fax: (415) 255-8631

Attorney for Defendant
MORIS FLORES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>  vs.<br><br><br>MORIS FLORES,<br><br>        Defendant. | No. CR 08 0730 WHA<br><br>**NOTICE OF MOTION AND MOTION TO SUPPRESS; DECLARATION OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br><br>Court: Hon. William Alsup |

      Defendant MORIS FLORES hereby moves the Court for an order excluding from evidence at trial the following:

      1.    All statements made by Mr. Flores following his arrest by the SFPD on August 5, 2004;

      2.    All statements made by Mr. Flores following his arrest by the SFPD on March 8, 2006.

      This motion is made on the grounds that the above warrantless arrests of Mr. Flores violated the Fourth Amendment to the United States Constitution in that the arrests were without probable cause, and that Mr. Flores's statements following these warrantless arrests were taken in violation of Mr. Flores's Sixth Amendment rights.

      This motion is based on this notice of motion and motion, the memorandum of points and authorities and declaration of counsel attached hereto, the docket, files and records of this case, and

Flores: Suppress Warrantless Arrests
CR-08-0730 WHA         1

such other evidence and argument, oral or documentary, as may be presented at the hearing of this motion.

DATED: June 24, 2011.                                       Respectfully Submitted,

                                                      /s/ Mark Rosenbush

                                                      MARK ROSENBUSH
                                                      Attorney for Defendant
                                                      MORIS FLORES

## **DECLARATION OF COUNSEL**

I, Mark Rosenbush, hereby declare:

1.     I am an attorney duly licensed to practice law in this district and before this Court. I am counsel for defendant MORIS FLORES in the above captioned case.

2.     On or shortly before June 20, 2011, the government informed counsel for Mr. Flores that during the second round of testimony of SFPD officer Mario Molina they would be attempting to place in evidence several alleged statements by Mr. Flores to officer Molina. However, the government did not specify what statements by Mr. Flores the intended to adduce. I therefore inquired of counsel for the government where in the discovery the statements were located.

3.     On June 22, 20011, counsel for the government disclosed to me (in an email) that the government would be seeking to admit statements Mr. Flores allegedly made to officer Molina following Molina's arrests of Flores in March of 2006 and August of 2004.

4.     The first statement counsel for the government specified for me on June 22, 2011, involves an arrest of Mr. Flores on August 5, 2004, when Mr. Flores was 15. Filed herewith as "Exhibit A" are several pages from an SFPD police report concerning the arrest, which were labeled by the government as Bates numbers MFlores000009 - Mflores000010 and MFlores000030. As far as the defense can ascertain, the government has never disclosed a complete copy of this report; what was disclosed was included in the government's April 2, 2011, delivery of discovery to Colour Drop (the Saturday before opening statements to the jury began).

5.     The second statement AUSA Gibbons described to me on June 22, 2011, involves an arrest of Mr. Flores by the SFPD on March 8, 2006, when Mr. Flores was 17. Filed herewith as "Exhibit B"are several pages from an SFPD police report concerning the arrest, which were labeled by

the government as Bates numbers SFPD007718 - SFPD007735. This report was included in the government's discovery package delivered to Coluor Drop on February 28, 2011. Though the March 8, 2006, report indicates officer Molina believed there was an active warrant for Mr. Flores's arrest on that date, as far as I am aware the government has not disclosed any such arrest warrant.

I hereby declare, under penalty of perjury under the laws of the United States, that the foregoing is true to the best of my knowledge and belief. Executed this 24th day of June, at San Francisco, California.

                                                        /s/ Mark Rosenbush

                                                 MARK ROSENBUSH
                                                 Attorney for Defendant
                                                 MORIS FLORES

**MEMORANDUM OF POINTS AND AUTHORITIES**

**STATEMENT OF FACTS**

I.    TIMELINESS.

The Court required the defense to make all suppress motions by July 27, 2010. See Docket #998, #1921. Mr. Flores filed several such motions, including a motion in which he moved to suppress all evidence gathered as the result of warrantless searches, arrests or detentions of Mr. Flores. See Docket #1992. In this motion, Mr. Flores specifically included a "catch-all" provision for all evidence the government had seized but not yet disclosed or noticed for use in the government's case-in-chief. See *id*. In addition, Flores's motion noted that Flores had been subject to many arrests and detentions by SFPD officer Mario Molina over the years, but that the defense had not been provided discovery concerning supposed statements by Flores to Molina. See Docket 1992 at Declaration of Counsel, ¶ 5-6.[1] In support of this "catch-all" motion, counsel for Mr. Flores averred,

> I am also aware, based on my review of the discovery, that officer Molina has questioned Mr. Flores on many occasions, absent a search or arrest warrant (he has also questioned Mr. Flores following arrests and detentions during searches pursuant to warrants). Officer Molina claims that on many of these occasions Mr. Flores has admitted he was a member of 20th St. MS. However, the government has given no

---

[1] Specifically, Mr. Flores moved to suppress: "All physical items, all observations of Mr. Flores, all statements by Mr. Flores, all photos of Mr. Flores, or other evidence relating to Mr. Flores obtained as the result of warrantless detentions or arrests of Mr. Flores on any other date." See Docket #1992 at p.2.

indication of which, if any, of these supposed admissions they intend to introduce at trial.

Docket #1992 at p.4.

In response, the government argued that Flores's "catch-all" provision "is so vague that is fails to articulate any legal claim, and should be rejected as a result." See Docket #2135 at fn.4. The government also did not indicate whether it would seek to admit in its case at trial any statements by Flores to Molina. See Docket #2135. Ruling on Flores's motion, the Court did not address Mr. Flores's "catch-all" provision in his motion. See Docket 2300. The Court issued its ruling on the suppression motions on September 22, 2010. *Id.*

On October 20, 2010, defendant Cruz-Ramirez filed a motion seeking notice pursuant to Rule 12(b)(4)(B). See Docket #2398. In his motion for notice of items that might be subject to motion to suppress, defendant Cruz-Ramirez noted,

> Mr. Cruz-Ramirez is moving to suppress evidence that he is aware of that the Government is seeking to introduce against him. However, because of the discovery management process in this case, he cannot be certain that he is addressing all of the pertinent evidence. This motion provides the Government the opportunity to clarify that state of affairs.

*Id.* at p.2.

Mr. Flores joined Cruz-Ramirez's motion. See Docket #2417. On November 4, 2010, in response to the defense motion for 12(b)(4)(B) notice, the government indicated it had provided the defense with notice of all items the government would seek to introduce, and that such notice consisted of everything the government had disclosed pursuant to Rule 16. See Docket # 2514. The government specifically stated,

> In any event, just in case there is any uncertainty, the Government hereby reiterates its intent to use the evidence produced pursuant to Rule 16(a) as evidence in its case-in-chief so that all the defendants in this case may have the opportunity to seek to suppress any of it.

*Id.* Based on this representation, on December 12, 2010, the Court denied the defendants' motion for 12(b)(4)(B) notice as "moot." See Docket 2370.

When the motions to suppress were litigated, as well as when the government stated it intended to use any evidence "produced" pursuant to Rule 16, the government had not disclosed or otherwise "produced" the two statements by Moris Flores at issue in this motion. The government did not

produce the two Flores statements at issue until late February and early April of 2011, at least eight months after the deadline for litigation of suppression motions and least four months after the government provided its "notice" pursuant to 12(b)(4)(B). See Declaration of Counsel, supra.

On July 15, 2010, the Court issued a revised scheduling order in which the Court "cut-off" disclosure of Rule 16(a)(1) materials as of that date. See Docket #1921 at p.6.

II.     THE AUGUST 5, 2004, ARREST OF MR. FLORES.

On August 5, 2004, Mr. Flores was arrested by officers Dion McDonnell and Mario Molina. See Exhibit A. The reason for the arrest is unknown. See id. However, the San Francisco Juvenile Court Admission Form the officers filled out following the arrest indicates Mr. Flores was detained for "Stolen Car - Gang Violation - Burglary Tools." See *id*.

The arrest reports indicates Mr. Flores was interviewed "once at the station," after the officers "contacted Flores' Mother, Mrs. Rosa Vasquez [sic], who told [the officers] that she was in Reno, Nevada." Exhibit A. Officer McDonnels then questioned Mr. Flores, who allegedly made several inculpatory statements regarding his associations with MS-13. See *id.*

The "Juvenile Detention Disposition Report" associated with this arrest and questioning of Mr. Flores includes a section titled "Admonishments & Waivers." See Exhibit A. The form includes section in which the arresting officers may indicate the detained juvenile was advised of his Miranda rights and knowingly and intelligently waived. See id. The officers who arrested Flores and apparently filled out the disposition report did not indicate Flores was advised of his rights, and the narrative in the police incident report does not mention the officers admonishing Flores at any point following his arrest. See *id.*

III.    THE MARCH 8, 2006, ARREST OF MR. FLORES.

On March 8, 2006, SFPD officers Molina and Browne observed Moris Flores, as Flores was standing near the corner of Mission and 20th Streets. See Exhibit B. Flores was standing next to one Jose Quinteros and "numerous other persons" at the corner. *Id.* Based on officer Molina's belief that there was an active warrant for Flores's arrest, the officers stopped to approach Flores and Quinteros. *Id.*

As the officers were approaching they observed Flores "displaying gang hand signs" to the occupant of a vehicle stopped at the intersection on Mission St. *Id.* According to the officers, the

occupants of the vehicle were "smiling and laughing at Flores." *Id.*

The officers then observed Quinteros bend down and pick up a bottle, then throw it at the car at which Flores had been "throwing gang hands signs." See Exhibit B. The bottle bounced of that car and struck another car that was stopped in the next lane. *Id.* The officers apparently did not observe any communication between Quinteros and Flores prior to Quinteros seizing and throwing the bottle. *Id.*

After Mr. Quinteros threw the bottle, Mr. Flores apparently saw officers Browne and Molina approaching and ran. See Exhibit B. Eventually, Flores entered a building and stopped running, and Molina arrested him without incident.

## ARGUMENT AND AUTHORITIES

I. ANY WARRANTLESS ARRESTS AND SUBSEQUENT QUESTIONING OF MR. FLORES ARE PRESUMPTIVELY UNLAWFUL AND THE GOVERNMENT BEARS THE BURDEN OF ESTABLISHING EACH SUCH SEARCH WAS DONE PURSUANT TO AN EXCEPTION TO THE WARRANT REQUIREMENT.

A search or seizure without a warrant is presumptively invalid. *Coolidge v. New Hampshire*, 403 U.S. 443 (1971). It is a "cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions.'" *Acevedo v. California*, 500 U.S. 565, 580 (1991) (quoting *Mincey v. Arizona*, 437 U.S. 385, 390 (1978)).

In the absence of evidence that the two warrantless arrests of Mr. Flores by the SFPD satisfy any of the well-settled exceptions to the Fourth Amendment's warrant requirement, any evidence gathered as a result of such arrests or detentions is presumptively inadmissible. See, e.g., *Coolidge v. New Hampshire*, 403 U.S. 443 (1971). The state has the burden of justifying warrantless searches. See, e.g., *United States v. Jeffers*, 342 U.S. 48 (1951); *McDonald v. United States*, 335 U.S. 451 (1948).

It is well established that in the case of a warrantless arrest or search, any evidence that establishes that the search or seizure was made without a valid warrant places at issue the lawfulness of any resulting search. See, e.g., *United States v. Castro,* 606 F.2d 251, 252 (9th Cir. 1979 ("The appellant satisfactorily alleged an illegal arrest, so as to put the Government to its proof," by alleging at

a suppression hearing "that the statements elicited from him during [booking] were not admissible because he was arrested without a warrant."); see also *United States v. De La Fuente*, 548 F.2d 528, 533 (5th Cir. 1977). Once it is established that there was no warrant, it falls upon the government to produce evidence concerning probable cause, as well as an exception to the Forth Amendment. See *United States v. Delgadillo-Velasquez*, 856 F.2d 1292 (9th Cir. 1988); *United States v. Al-Azzawy*, 784 F.2d 890 (9th Cir. 1986), cert. denied, 476 U.S. 1144 (1987). As the Fifth Circuit noted in *De La Funete*,

> in some well-defined situations the ultimate burden of persuasion may shift to the government upon an initial showing of certain facts by the defendant. For example, if a defendant produces evidence that he was arrested or subjected to a search without a warrant, the burden shifts to the government to justify the warrantless arrest or search.

*De La Fuente*, 548 F.2d at 533.

Moreover, recognizing that often the facts supporting a defense motion to suppress are in the possession of the government and not accessible to the defense, the Ninth Circuit has taken a flexible approach to the necessary proffer as long as it meets the definite, specific, detailed and non-conjectural standard. See, e.g., *Dubner v. City and County of San Francisco*, 266 F.3d 959, 965 (9th Cir. 2001)("Although the [the arrestee] bears the burden of proof on the issue of unlawful arrest, she can make a prima facie case simply by showing that the arrest was conducted without a valid warrant. At that point, the burden shifts to the [government] to provide some evidence that the arresting officers had probable cause for a warrantless arrest . . . This minimal burden shifting forces the police department, which is in the better position to gather information about the arrest, to come forward with some evidence of probable cause.")

II.  MR. FLORES'S STATEMENTS TO THE SFPD FOLLOWING HIS AUGUST 5, 2004, ARREST MUST BE SUPPRESSED BECAUSE THE ARREST WAS UNLAWFUL AND MR. FLORES WAS NOT ADVISED OF HIS SIXTH AMENDMENT RIGHTS

The government will not dispute that Mr. Flores was arrested and subsequently interrogated by SFPD officer Molina on August 5, 2004. However, the government has not produced any evidence whatsoever as to why Mr. Flores was arrested that day. And given that the arrest was apparently without a warrant, the arrest is not presumptively lawful. Until such time as the government establishes probable cause for the August 5 arrest, the Court must find the arrest unlawful and suppress

all fruits of the arrest, including Mr. Flores's statements. That the statements were the direct result of the arrest is indisputable; the incident report indicates Flores made his statements in response to questioning immediately following the arrest.

It is also evident the police did not admonish Mr. Flores concerning his Sixth Amendment rights. The incident report does not mention any such admonishment, and the police left entirely blank the section of the juvenile booking form in which the admonishment should be noted if it was made.

In *Miranda* the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona* (1966) 384 U.S. 436, 444. "Those safeguards included the now familiar *Miranda* warnings. . .", namely the right to remain silent, the right to the presence and appointment of counsel, and the warning that statements may be used against the defendant in court. *Rhode Island v. Innis* (1980) 446 U.S. 291, 297. When the police fail to give these warnings before custodial interrogation, "*Miranda* required suppression . . . by presuming that statements made while in custody and without adequate warnings were protected by the Fifth Amendment." *Oregon v. Elstad* (1985) 470 U.S. 298, 304. In the instant case, Ms. Flores was in custody, having been arrested and booked, and the questioning apparently took place in the police station. Flores's statements were also made in response to interrogation by officer McDonnell, as the police described in their report.

IV. THE MARCH 8, 2006, SAN FRANCISCO POLICE DEPARTMENT ARREST OF MR. FLORES WAS UNLAWFUL BECAUSE THE POLICE LACKED PROBABLE CAUSE THAT MR. FLORES HAD COMMITTED A CRIME.

According the police report concerning the arrest, Mr. Flores was subject to an arrest warrant. However, the warrant was not included in the report and the government has not produced any evidence that the supposed warrant was actually active and valid. Mr. Flores submits that's officer Browne's statement in a report that Officer Molina believed that there was an active arrest warrant does not suffice to establish the arrest was lawful. See, e.g., *United States v. Pratt*, 438 F.3d 1264, 1270 (11th Cir. 2006), cert. denied , 547 U.S. 1141 (2006) (explaining that when a search warrant is lost before the suppression hearing, "[t]he Government does not need to prove the warrant's existence with certainty, but rather by a preponderance of the evidence."); *United States v. Burkhart*, 347 F.2d 772,

774 (6th Cir. 1965)("Appellants rely upon the government's failure to present the arrest warrant at the time of trial as proof that no such warrant existed. But the government's witnesses testified that they did have the warrant at the time of the arrest and the United States Commissioner testified that he had issued it. The Court was not in error in resolving this question of fact on the hearing of the motion to suppress, in favor of the government's contention.")

Following his arrest on March 8, Mr. Flores was booked on a charge of violating California Penal Code sections 245(a), assault with a deadly weapon, 148, resisting arrest, and 186.22(a), criminal street gang activity. However, Mr. Flores was never prosecuted on any of these charges, and the reason is obvious. Mr. Flores's conduct, as reported by the complaining witness, did not constitute a crime.

First, officer Browne clearly identified Mr. Quinteros as the person who picked up the bottle and threw it at the car. He did not report that Mr. Flores had a weapon, or that Mr. Flores communicated with Mr. Quinteros in any way prior to Mr. Quinteros throwing the bottle. Thus, officer Browne's observations did not provide probable cause that Mr. Flores committed an assault of any sort.

A violation of California Penal Code section 148 requires that the perpetrator "willfully" resist arrest. See Cal. Pen. Code § 148. In addition, a person may lawfully resist an unlawful arrest, including an arrest without probable cause. See *Jackson v. Superior Court of Merced County*, 98 Cal App 2d 183, 219 (1950). Under California law a person may not resist even an unlawful arrest by using force or a weapon. See Cal. Penal Code § 843. However, there is no evidence that Mr. Flores used force to avoid arrest by officer Molina; Flores simply ran away.

> Finally, subdivision (a) of California Penal Code section 186.22 provides:
> Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison for 16 months, or two or three years.

"Willful assistance" requires specific intent on the part of the defendant to promote a felony

offense, and cannot be predicated on mere membership in, or association with, other gang members. See, e.g., *People v. Green,* 227 Cal. App. 3d 692, 699 (Cal. Ct. App. 1991). Here, what officers Browne and Molina observed - Mr. Flores laughing while an associate picked up a bottle, flashed a gang sign, then threw the bottle at a car, does not provide probable cause that Mr. Flores willfully assisted in any felonious conduct by another member of the MS-13.

Because the police did not have probable cause that Mr. Flores had committed any crime, if the police did not have a warrant then Flores's arrest on March 8, 2006, was unlawful and all fruits of that arrest must be suppressed.

## **CONCLUSION**

Unless and until the government presents evidence establishing that each of the above described arrests of Mr. Flores was justified under an exception to the Fourth Amendment warrant requirement, or that a valid arrest warrant existed, the Court should suppress all statements obtained by the police as a result of the warrantless intrusions upon Mr. Flores's liberty.

In addition, Mr. Flores was clearly subjected to custodial interrogation following his August 5, 2004 arrest, and that questioning led to his inculpatory statements. Unless the government can establish that the police advised Flores of his constitutional rights, Mr. Flores's statements must be excluded.

Dated: July 24, 2010.                                                     Respectfully Submitted,

    /s/ Mark Rosenbush

MARK ROSENBUSH
Attorney for Defendant
MORIS FLORES